UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

COUDERT BROTHERS LLP,

                    Debtor.

-----------------------------------------------------------X

DEVELOPMENT SPECIALISTS, INC., in its
capacity as Plan Administrator for Coudert Brothers
LLP,

                    Plaintiff,

        -v-

RUPERT X. LI,

                    Defendant.

No. 16-CV-8237 (KMK)


<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

David J. Adler, Esq.
McCarter & English LLP
Newark, NJ
*Counsel for Plaintiff*

John G. McCarthy, Sr.
Smith, Gambrell & Russell, LLP
New York, NY
*Counsel for Plaintiff*

Rupert X. Li
Hong Kong
*Pro Se Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Development Specialists, Inc. ("Plaintiff") brings this Action in its capacity as

the Plan Administrator for Coudert Brothers LLP, seeking confirmation of an arbitration award

rendered against Defendant Rupert X. Li ("Defendant").  United States Bankruptcy Judge Robert

D. Drain issued proposed findings of fact and conclusions of law on October 21, 2016,

recommending that the Court confirm the arbitration award.  (*See* Dkt. No. 1.)  For the reasons to

follow, the Court declines to adopt the proposed findings and conclusions of the bankruptcy

court.

## I.  Background

### A.  Factual Background

The following facts are taken from the sworn declaration of John G. McCarthy, submitted

in support of Plaintiff's Motion To Confirm Arbitration Award.  (*See* Decl. of John G. McCarthy

in Supp. of Mot. To Confirm Arbitration Award ("McCarthy Decl.") (Dkt. No. 14, 08-AP-1475

Dkt.).)

Coudert Brothers LLP ("Coudert") was an international law firm headquartered in New

York and organized as a New York limited liability partnership.  (*See id.* ¶ 2.)  Coudert dissolved

on August 16, 2005, (*see id.*), and on September 22, 2006, Coudert filed a voluntary petition for

bankruptcy under Chapter 11 of the Bankruptcy Code in the bankruptcy court of the Southern

District of New York, (*see id.* ¶ 4).  On August 27, 2008, the bankruptcy court confirmed the

First Amended Plan of Liquidation (the "Plan").  (*See id.*)  Pursuant to the Plan, any former

partner in Coudert could execute a Participating Settlement Agreement with the Plan

Administrator, Plaintiff, to fulfill his or her obligations to Coudert with respect to any

outstanding amounts owed.  (*See id.* ¶ 5.)  Defendant, a former partner in Coudert, (*see id.* ¶ 3),

did not execute a Participating Settlement Agreement or otherwise participate in the Plan, (*see id.*

¶ 8).

Shortly after the effective date of the Plan, Plaintiff commenced adversary proceedings against several partners in Coudert, including Defendant, who had not participated in the Plan. (*See id.* ¶ 9.) The complaint against Defendant stated claims for breach of contract, avoidance and recovery of fraudulent transfers, and unfinished business. (*See id.*) The complaint sought damages in the amount of $98,583.70. (*See id.* ¶ 10.) The claim for unfinished business was thereafter withdrawn. (*See id.* ¶ 11.)[1]

On June 17, 2013, Plaintiff moved to compel arbitration of the claims in the adversary proceedings relating to breach of contract for any partner domiciled in foreign countries, including Defendant, who resides in Hong Kong. (*See id.* ¶ 14.) The motion was brought pursuant to a Partnership Agreement, executed in May 11, 2001, wherein Defendant and other partners agreed to arbitrate in New York City any disputes related to the Partnership Agreement. (*See id.* ¶ 13; *see also* McCarthy Decl. Ex. B, at 34.) On July 19, 2013, the bankruptcy court granted Plaintiff's motion and compelled arbitration of the contract-related disputes. (*See* McCarthy Decl. ¶ 15.) Prior to the commencement of arbitration, several partners, though not Defendant, settled with Plaintiff. (*See id.* ¶ 16.)

On or about September 6, 2013, Plaintiff commenced arbitration against 10 foreign partners ("Respondents"), including Defendant, before the International Centre for Dispute Resolution (the "ICDR") of the American Arbitration Association (the "AAA"). (*See id.* ¶ 17.) The arbitrator conducted a preliminary conference call on April 10, 2014, notice of which was served on all parties by the ICDR. (*See id.* ¶ 19.) The arbitrator ultimately decided to conduct all proceedings telephonically to accommodate the various foreign partners. (*See id.* ¶ 23.)

---

[1] The McCarthy declaration avers that "[Defendant] ignored the [c]ourt's process," (*see* McCarthy Decl. ¶ 12), but does not explain what specific process or orders of the court Defendant ignored.

Hearings were held telephonically on July 15, 2014 and August 1, 2014. (*See id.* ¶ 24.) Though notice was delivered to all Respondents, no Respondent appeared or otherwise participated in those hearings. (*See id.*) The arbitrator solicited additional material from Plaintiff to ensure that Respondents had been given adequate notice and conducted another conference call on October 30, 2014. (*See id.* ¶ 25.) Notice was again provided to each Respondent, none of whom offered objections to the proceedings. (*See id.*) After the close of the hearings, the arbitrator invited Plaintiff and Respondents to submit additional evidence, but only Plaintiff took advantage of that opportunity. (*See id.* ¶ 26.)

At one point in the proceedings, one Respondent, Jeremy Joseph Bartlett, challenged the venue of the arbitration, but that challenge was denied. (*See id.* ¶ 22.) Other than an email to the ICDR joining Bartlett's challenge, (*see* Mot. To Confirm an Arbitration Award Pursuant to 9 U.S.C. § 9 ("Mot. To Confirm") Ex. A ("Final Award"), at Schedule D-3 (Dkt. No. 13, 08-AP-1475 Dkt.)), Defendant did not participate in the arbitration, (*see* McCarthy Decl. ¶ 20).

On September 30, 2015, the arbitrator issued a Final Award. (*See id.* ¶ 28.) The Final Award resolved the claims against each Respondent. (*See id.*) After determining that Defendant had received adequate notice of the proceedings, (*see id.* ¶ 30; *see also* Final Award at Schedule D-3), the arbitrator determined that Plaintiff had adequately proven that Defendant owed $98,583.70 in damages, pre-award interest in the amount of $63,590.54, and costs for the arbitration proceeding in the amount of $8,717.00, (*see id.* ¶ 32).[2] Defendant has not paid any portion of the amount owed. (*See id.* ¶ 33.)

---

[2] The McCarthy declaration states that "Sullivan," an otherwise unidentified party, owed these amounts. (*See* McCarthy Decl. ¶ 32.) The Court presumes that this is a typo, perhaps mistakenly left over from a draft of the declaration in a different proceeding.

### B. Procedural History

Plaintiff filed the original complaint in the adversary proceeding on September 21, 2008. (*See* Dkt. No. 1, 08-AP-1475 Dkt.)  Service of the complaint on Defendant via FedEx was verified by way of a Certificate of Service filed February 6, 2009.  (*See* Certificate of Service (Dkt. No. 4, 08-AP-1475 Dkt.).)  After the Final Award was rendered, Plaintiff moved in the bankruptcy court to confirm the Final Award.  (*See* Mot. To Confirm.)  Defendant did not oppose the motion.  Because the adversary proceeding is a non-core proceeding, on October 21, 2016, Judge Drain issued his Proposed Findings of Fact and Conclusions of Law to this Court. (*See* Dkt. No. 1.)  Defendant offered no objection to the proposed findings and conclusions. Defendant has, in fact, not participated or otherwise appeared in the adversary proceeding.

## II.  Discussion

### A. Standard of Review

The bankruptcy code provides that bankruptcy judges are empowered to hear non-core proceedings that are otherwise related to a bankruptcy case.  28 U.S.C. § 157(c)(1).  In such cases, and absent consent by the parties to final adjudication by the bankruptcy court, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court.  *Id.*  Final judgment may then be entered in such a case only after the district court has "consider[ed] the bankruptcy judge's proposed findings and conclusions and . . . review[ed] de novo those matters to which any party has timely and specifically objected."  *Id.*  Although the text of the statute mandates de novo review only with respect to those matters to which a party has timely and specifically objected, the Supreme Court has nonetheless instructed that "[t]he district court must . . . review those proposed findings and conclusions de novo and enter any final orders or judgments."  *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014)

(italics omitted) (citing 28 U.S.C. § 157(c)(1)); *see also id.* ("Put simply: . . . . [i]f a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law.  Then, the district court must review the proceeding de novo and enter final judgment." (italics omitted)).

Although the Complaint claims that the adversary proceeding is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(H), Plaintiff in its Proposed Findings of Fact and Conclusions of Law has changed course and argues that a proceeding seeking damages for a prepetition breach of contract is a non-core proceeding.  (*See* Proposed Findings of Fact and Conclusions of Law 6 (Dkt. No. 13-1, 08-AP-1475 Dkt.).)  Plaintiff is correct that the instant proceeding is non-core.  *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) ("[A] breach-of-contract action by a debtor against a party to a pre-petition contract . . . is non-core.").  Thus, notwithstanding that Defendant has interposed no objections to the proposed findings and conclusions, the Court is obliged to undertake a de novo review of the record.

B.  Analysis

1.  Subject Matter Jurisdiction

"The [Federal Arbitration Act (the "FAA")] creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes."  *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 420 (S.D.N.Y. 2012); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985) ("'[T]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered,' a concern which 'requires that we rigorously enforce agreements to arbitrate.'" (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).  The FAA

applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also*

*Adams v. Suozzi*, 433 F.3d 220, 225 (2d Cir. 2005). Among other things, the FAA stipulates:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [§§] 10 and 11 of this title.

9 U.S.C. § 9. "If no court is specified in the agreement of the parties, then such application may

be made to the United States court in and for the district within which such award was made."

*Id.*

As the Second Circuit has observed, "[i]t does not follow . . . that simply because the

contract in issue involves interstate commerce, a federal court has jurisdiction to confirm the

[arbitration] award and enter judgment." *Varley v. Tarrytown Assocs., Inc.*, 477 F.2d 208, 210

(2d Cir. 1973). For a court to have jurisdiction over confirmation of an arbitration award, the

FAA makes clear that the parties must have "agreed that a judgment of the court shall be entered

upon the award." *Id.* (quoting 9 U.S.C. § 9). However, even where there is no explicit

agreement in the contract providing for entry of judgment upon the award, if the arbitration

clause provides for arbitration pursuant to a specific set of arbitration rules, that language "is

sufficient to incorporate the rules into the agreement." *Id.* (citing *Reed & Martin, Inc. v.*

*Westinghouse Elec. Corp.*, 439 F.2d 1268 (2d Cir. 1971)); *see also Idea Nuova, Inc. v. GM*

*Licensing Grp., Inc.*, 617 F.3d 177, 181 (2d Cir. 2010) ("We thus conclude that when . . . parties

expressly agree to submit their commercial disputes to AAA arbitration for resolution, such

language is reasonably understood, without more, to agree to arbitration pursuant to AAA rules

and to the incorporation of those rules into the parties' agreement." (citation and internal

quotation marks omitted)); *cf. Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 436 n.2

(2d Cir. 2004) ("[O]ur cases have not required that consent be explicit in order to satisfy § 9."). The AAA rules for arbitration provide that "[p]arties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures* R-52(c) (July 1, 2016), https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased. Thus, if an arbitration agreement provides that the arbitration will be conducted pursuant to the AAA rules, or that disputes will be submitted to the AAA for arbitration, that language is sufficient to confer jurisdiction pursuant to § 9 of the FAA. *See Idea Nuova*, 617 F.3d at 182 ("[P]arties to AAA arbitration consent to judicial confirmation of final arbitral awards."); *Noble Ams. Corp. v. Iroquois Bio-Energy Co., LLC*, No. 12-CV-3236, 2012 WL 5278505, at *2 (S.D.N.Y. Oct. 25, 2012) ("[W]here, as in this case, an agreement incorporates the AAA [r]ules, the FAA's 'consent to confirmation' requirement is met and a court has jurisdiction to confirm the award.").

Here, the arbitration agreement provides that "[a]ny dispute or controversy arising under or in connection with this Agreement among the parties subject hereto shall be determined by arbitration pursuant to the rules of the American Arbitration Association." (McCarthy Decl. Ex. B, Art. 13(a).) The law in the Second Circuit is clear that this clause is sufficient to vest the Court with jurisdiction, pursuant to 9 U.S.C. § 9, to enter a judgment confirming the arbitration award.

## 2. Personal Jurisdiction

### a. Amenability to Jurisdiction

Although Defendant has not appeared in this action, the Court is nonetheless obliged to determine whether it has personal jurisdiction over Defendant. *See, e.g.*, *In re Arbitration Between Trs. of N.Y. Joint Bd. Scholarship Fund & Morrison Mfg. Co.*, No. 95-CV-9494, 1996 WL 22980, at *1 (S.D.N.Y. Jan. 23, 1996) (considering whether the court had personal jurisdiction over nonappearing defendant before confirming an arbitration award); *Trs. of Amalgamated Ins. Fund v. Halltex Clothing Co.*, No. 85-CV-2283, 1985 WL 1621, at *1 (S.D.N.Y. June 12, 1985) (same); *see also Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant."); *cf. Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." (citations omitted)). By consenting to arbitration in New York, Defendant has agreed to be amenable to the personal jurisdiction of this Court. *See Doctor's Assocs. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction."); *see also Hermés of Paris, Inc. v. Swain*, No. 16-CV-6255, 2016 WL 4990340, at *2 (S.D.N.Y. Sept. 13, 2016) ("A party who agrees to arbitrate in a particular jurisdiction consents to both personal jurisdiction and venue of the courts within that jurisdiction."); *NGC Network Asia, LLC v. PAC Pac. Grp. Int'l, Inc.*, No. 09-CV-8684, 2010 WL 3701351, at *3 (S.D.N.Y. Sept. 20, 2010) ("In signing the [agreement to arbitrate], [the objecting party] agreed to arbitrate in New York and thus also consented to personal jurisdiction and venue in this district."). Defendant is, accordingly, amenable to the personal jurisdiction of the Court.

b.  Service of Process

Even though Defendant is amenable to the jurisdiction of this Court, there is, however,

the additional question of whether Defendant was properly served, thus completing the Court's

exercise of personal jurisdiction.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327

(2d Cir. 2016) (explaining that "[t]o exercise personal jurisdiction lawfully, . . . . the plaintiff's

service of process upon the defendant must have been procedurally proper" (internal quotation

marks omitted)), *cert. filed*, No. 16-1071 (Mar. 7, 2017); *see also Miss. Publ'g Corp. v.

Murphree*, 326 U.S. 438, 444–45 (1946) ("[S]ervice of summons is the procedure by which a

court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the

person of the party served.").  Plaintiff offers little discussion of this issue, but a close look at the

Federal Rules of Civil Procedure and the relevant case law reveals that this is not a simple

question.

The FAA states that if an adverse party "is a resident of the district within which the

award was made, such service shall be made upon the adverse party or his attorney as prescribed

by law for service of notice of motion in an action in the same court."  9 U.S.C. § 9.  If, however,

the adverse party is a "nonresident, then the notice of the application shall be served by the

marshal of any district within which the adverse party may be found in like manner as other

process of the court."  *Id.*  Thus, "the statute does not provide for service of the respondent at any

location that does not lie within a judicial district of the United States."  *Marine Trading Ltd. v.

Naviera Commercial Naylamp S.A.*, 879 F. Supp. 389, 391 (S.D.N.Y. 1995).

Defendant is a foreign party, currently residing in Hong Kong.  (*See* Certificate of

Service ¶ 3 (Dkt. No. 4, 08-AP-1475 Dkt.).)  Service here is thus governed by the ordinary rules

for service of a summons and complaint on a foreign party set forth in the Federal Rules of Civil

Procedure.  *See Marine Trading Ltd.*, 879 F. Supp. at 391–92; *see also In re Arbitration Between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp.*, 146 F.R.D. 64, 67 (S.D.N.Y. 1993) ("[T]he [c]ourt has concluded that [§] 12 provides no method of service for foreign parties not resident in any district of the United States, and that the proper fallback provision for service of process is Fed. R. Civ. P. 4.").

Federal Rule of Civil Procedure 4(f) provides that individuals in foreign countries may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Federal Rule of Civil Procedure 4(*l*) further provides that if service is made under Rule 4(f)(2) or (f)(3), service must be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee."  On August 22, 2016, the Clerk of Court of the United States Bankruptcy Court for the Southern

District of New York filed a Certification of Foreign Mailing indicating that notice of the hearing on Plaintiff's Motion To Confirm an Arbitration Award had been served by registered mail, with a return receipt requested, to Defendant at his office in Hong Kong. (*See* Certification of Foreign Mailing (Dkt. No. 17, 08-AP-1475 Dkt.).) Although the document contains a receipt for registered mail addressed to Defendant, the form of mail did not require a signed receipt as required by Rule 4(f)(2)(C)(ii). There is thus a question of whether service in this manner on Defendant was adequate.

More critically, however, the document reflects only that notice of the hearing on the pending Motion was delivered via this method. Rule 4 requires service of the summons and complaint on each defendant, and therefore service of the summons and complaint on Defendant must also have been effected pursuant to Rule 4(f). *See* Fed. R. Civ. P. 4(a)–(c); *see also Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12-CV-9258, 2014 WL 1331046, at *6 (S.D.N.Y. Mar. 31, 2014) ("In the absence of effective service of summons, a federal court may not exercise personal jurisdiction over a defendant."). Service of the summons and complaint was effected, or at least was attempted to have been effected, on February 6, 2009 by an agent of Plaintiff through FedEx and First Class Mail sent to the last known address of Defendant, in Hong Kong. (*See* Certificate of Service (Dkt. No. 4, 08-AP-1475 Dkt.).) The Court will therefore examine each mode of service prescribed by Rule 4(f) to determine whether service of the summons and complaint was properly effected here.

### i. Rule 4(f)(1)

Rule 4(f)(1) allows for service through "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). The Hague

Convention sets forth, for participating countries, a detailed method of service whereby each participating state designates a "Central Authority" to receive requests for service from other states. Convention on Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") art. 2, Nov. 15, 1965, 20 U.S.T. 361. Hong Kong is a signatory to the Hague Convention regarding service abroad. *See McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 132 (S.D.N.Y. 2013); *Silver Top Ltd. v. Monterey Indus. Ltd.*, No. 94-CV-5731, 1995 WL 70599, at *2 (S.D.N.Y. Feb. 21, 1995). There is no suggestion by Plaintiff, and no evidence in the record, that service on Defendant was ever attempted via the procedure suggested by Article 2 of the Hague Convention. Service was therefore not effected pursuant to the Hague Convention as allowed by Rule 4(f)(1).

The Court is cognizant of the fact that Article 10(a) of the Hague Convention provides that if the "State of destination does not object, the present Convention shall not interfere with (a) the freedom to send judicial documents, by postal channels, directly to persons abroad . . . ." Hague Convention art. 10. Hong Kong has not objected to Article 10(a). *See Declaration/Reservation/Notification: Special Administrative Region of Hong Kong*, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (last visited Mar. 30, 2017); *see also Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Res. Ltd.*, No. 15-CV-1671, 2015 WL 6437384, at *2 (S.D.N.Y. Oct. 19, 2015) ("Declarations regarding the Hague Convention that apply to the Special Administrative Region of Hong Kong do not include objection to service under Article 10(a)."). The Second Circuit has held that where the recipient country is a signatory to the Hague Convention and has not objected to Article 10(a), service on a defendant via mail is not in

violation of the Hague Convention.  *See Ackermann v. Levine*, 788 F.2d 830, 838–39 (2d Cir. 1986).[3]

That leaves open the question of whether service pursuant to Article 10(a) is an "internationally agreed means of service" authorized under Rule 4(f)(1), such that service on Defendant via mail would satisfy the Federal Rules of Civil Procedure.  Some courts in the Second Circuit have interpreted Article 10(a), and Hong Kong's nonobjection, to mean that service via mail is, in fact, an "internationally agreed means of service."  *See Bidonthecity.com*, 2014 WL 1331046, at *7 (holding that the Hague Convention provides for "service by mail if the receiving state does not object"); *Treeline Inv. Partners, LP v. Koren*, No. 07-CV-1964, 2007 WL 1933860, at *5 (S.D.N.Y. July 3, 2007) ("Since Israel has not objected to Article 10(a) of the [Hague] Convention, service through international registered mail remains an acceptable method of serving [the defendant], an individual defendant who resides in Israel."); *Silver Top Ltd.*, 1995 WL 70599, at *2 ("Since Hong Kong did not object to Article 10, service of process by registered mail is an appropriate method of service in that country under the [Hague] Convention." (citation omitted)).  Some of these cases rely on the Second Circuit case *Ackermann v. Levine*, 788 F.2d 830 (2d Cir. 1986).  There, the Second Circuit determined that because the United States "has made no objection to the use of 'postal channels' under Article 10(a), service of process by registered mail remains an appropriate method of service in this country under the Convention."  *Id.* at 839.  The court added that whether the service at issue in that case was compliant with Rule 4 was "irrelevant because the United States has made no

---

[3] A pending Supreme Court case, *Water Splash, Inc. v. Menon*, No. 16-254, has called the holding of *Ackermann* into question.  However, until the Supreme Court decides otherwise, *Ackermann* is the law of the Second Circuit, and, in any event, for the reasons discussed below, Plaintiff has not effected valid service of process on Defendant, and therefore even were *Ackermann* overruled, that would not affect the outcome here.

declaration or limitation to its ratification of the Convention regarding Federal Rule 4, or Article 10(a) of the Convention or otherwise regarding mail service under the Convention." *Id.* at 840.

*Ackermann* does not resolve the case before the Court. In *Ackermann*, Rule 4 was not at issue because the action was an effort to enforce a German judgment in an American court, and the question before the Second Circuit was whether the German plaintiff had properly effected service under the Hague Convention such that the judgment could be enforced in the United States. *See id.* at 837. The Second Circuit's conclusion that "the [Hague] Convention 'supplements'—and is manifestly *not* limited by—Rule 4," *id.* at 840, thus did not suggest that service effected in a United States District Court need not comply with Rule 4, only that Rule 4 does not limit the types of service the Hague Convention permits on defendants residing in the United States. Moreover, *Ackermann* was decided prior to the 1993 amendments to Rule 4, which incorporated by reference the means of service contemplated by the Hague Convention and explained the interaction between the rules of the Hague Convention and the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(f) advisory committee's note to 1993 amendment. The Second Circuit thus has not spoken on the issue here: whether Article 10(a) of the Hague Convention creates an "internationally agreed means of service" within the meaning of Rule 4(f)(1).

The Ninth Circuit, however, has addressed this precise issue. In *Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004), the court agreed with the Second Circuit's decision in *Ackermann* that Article 10(a) of the Hague Convention does not prohibit service via mail, so long as the recipient country does not object. *See id.* at 802. But, the Ninth Circuit also noted that "Article 10(a) does not itself affirmatively authorize international mail service. It merely provides that the Convention 'shall not interfere with' the 'freedom' to use postal channels if the 'State of

destination' does not object to their use." *Id.* at 803–04. The Ninth Circuit pointed to the Rapporteur for the Convention's explanation with respect to Article 10(a) that "[i]t should be stressed that in permitting the utilization of postal channels, . . . the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state." *Id.* at 804 (internal quotation marks omitted) (quoting 1 Bruno A. Ristau, *International Judicial Assistance* § 4-3-5, at 205 (2000)). The court concluded that it "must look outside the Hague Convention for affirmative authorization of the international mail service that is merely not forbidden by Article 10(a)," and added that "[a]ny affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed." *Id.* With respect to Rule 4(f)(1), the Ninth Circuit determined that "Rule 4(f)(1) does not go beyond means of service affirmatively authorized by international agreements," and that because the Hague Convention does not affirmatively authorize service via mail, service via mail was therefore not an "internationally agreed means" of service pursuant to Rule 4(f)(1). *See id.* The court also addressed other means of service under Rule 4(f), discussed below. *See id.* at 804–08.

Some courts in the Second Circuit have insisted that *Brockmeyer* is at odds with *Ackermann*. *See, e.g.*, *Treeline*, 2007 WL 1933860, at *5 n.5 (describing *Ackermann* and *Brockmeyer* as a "circuit split"); *Papir v. Wurms*, No. 02-CV-3273, 2005 WL 372061, at *4 (S.D.N.Y. Feb. 15, 2005) ("*Ackermann* is the law of th[e] [Second] Circuit and forecloses reliance on *Brockmeyer*."). These cases misapprehend the law. *Ackermann* did not reach the question of whether the service in that case complied with Rule 4 because the judgment sought to be enforced had been obtained in a foreign court—the sole question in *Ackermann* was whether the service that had been effected by a German plaintiff in a German court was in accordance

with the Hague Convention. *See Ackermann*, 788 F.2d at 837. The court's discussion of Rule 4 was only in reference to the fact that Rule 4 does not restrict how plaintiffs from other countries may serve a defendant residing in the United States pursuant to the Hague Convention. *See id.* at 840. In *Brockmeyer*, the Ninth Circuit agreed with the holding in *Ackermann* that service via mail is not in conflict with the Hague Convention, *see* 383 F.3d at 802, but, because the case involved service of process for a suit initiated in the United States, went further to examine the impact of Rule 4(f), *see id.* at 803–04. That the Ninth Circuit was required to confront a question not before the Second Circuit, and on which the Second Circuit has yet to rule, does not indicate a disagreement between the courts.

Having concluded there is no Second Circuit law on point, the Court is then left to determine whether service via mail is an "internationally agreed means of service" within the meaning of Rule 4(f)(1). On this point, the Court finds the reasoning in *Brockmeyer* persuasive. Indeed, the Ninth Circuit apparently did not even consider the issue a close one, as it dedicated only one paragraph to discussing Rule 4(f)(1). The plain language of the Hague Convention does not expressly authorize service via mail—the Convention is, in words and effect, agnostic on the topic. As "Rule 4(f)(1) does not go beyond means of service affirmatively authorized by international agreements," *id.* at 804, and the Hague Convention makes no affirmative authorization of service via mail, service via mail is not an appropriate form of service under Rule 4(f)(1) on a defendant residing in a country that is a signatory to the Hague Convention, absent some other international agreement providing for service via mail.

The cases in the Second Circuit suggesting otherwise are unpersuasive. In *Bidonthecity.com*, the court, though approving service via mail pursuant to Rule 4(f)(1), made no mention of the text of the rule, and nor did the court address whether Article 10(a) provided

affirmative authorization of service via mail, reciting only the uncontroversial fact that the Hague Convention "allows" for service through postal channels. 2014 WL 1331046, at *7. But while the Hague Convention allows for service through postal channels, that is far different from providing for such service through international agreement, which is what Rule 4(f)(1) requires.

In *Treeline*, the court concluded that because Israel and the United States are both signatories to the Hague Convention, and because Article 10(a) "permits service through mailing of 'judicial documents, by postal channels, directly to persons abroad,'" service via mail was appropriate. 2007 WL 1933860, at *5. But again, *permitting* service via mail, to the extent the Hague Convention indicates that it "shall not interfere" with the freedom to send judicial documents via mail, is different from *expressly authorizing* service via mail such that it could be said to be an "internationally agreed means of service." The most natural reading of the Hague Convention, coupled with the commentary of the Rapporteur for the Convention cited by the Ninth Circuit, is that the Hague Convention endeavored not to disturb existing agreements or understandings between nations regarding service of process via mail.

Rule 4(f)(1) requires that the form of service must be "agreed" upon. To hold that a form of service on which the Hague Convention is expressly agnostic is "agreed" upon would not only ignore the plain text of the rule, it would also call into serious question the need for Rules 4(f)(2) and (3), which offer detailed rules for effecting service in ways not provided, but also not prohibited, by international agreement. Thus, because service via mail on a defendant residing in a country that is a signatory to the Hague Convention is not, absent other evidence to the contrary, an "internationally agreed means of service," Rule 4(f)(1) cannot serve as the basis for service of process in this circumstance.

<u>ii.  Rule 4(f)(2)</u>

Rule 4(f)(2) allows service by certain prescribed methods reasonably calculated to give notice, provided there is either "no internationally agreed means," or "an international agreement allows but does not specify other means."  As noted above, Article 10 of the Hague Convention provides that if the "State of destination does not object, the present Convention shall not interfere with (a) the freedom to send judicial documents, by postal channels, directly to persons abroad," Hague Convention art. 10, and Hong Kong has not objected to this subdivision of Article 10.  The relevant international agreement therefore "allows" service of process via mail, but does not explicitly provide for such service, stating only that the Hague Convention "shall not interfere" with service by that means.  Service may therefore be effected under Rule 4(f)(2), subject to the conditions set forth in that rule.[4]

Two provisions are relevant here.  First, Rule 4(f)(2)(A) states that service may be effected "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction."  The rules of the High Court of Hong Kong provide:

(1)  A writ must be served personally on each defendant by the plaintiff or his agent.

(2)  A writ for service on a defendant within the jurisdiction may, instead of being served personally on him, be served

(a)  by sending a copy of the writ by registered post to the defendant at his usual or last known address, or

(b)  if there is a letter box for that address, by inserting through the letter box a copy of the writ enclosed in a sealed envelope addressed to the defendant.

. . . .

(3)  Where a writ is served in accordance with paragraph (2)

---

[4] The Court is confident that service via mail on a defendant in Hong Kong, when properly executed, is "reasonably calculated to give notice."

. . . .

> (b)  any affidavit proving due service of the writ must contain a statement to the effect that
>
>> (i)  in the opinion of the deponent (or, if the deponent is the plaintiff's solicitor or an employee of that solicitor, in the opinion of the plaintiff) the copy of the writ, if sent to, or as the case may be, inserted through the letter box for, the address in question, will have come to the knowledge of the defendant within 7 days thereafter; and
>>
>> (ii)  in the case of service by post, the copy of the writ has not been returned to the plaintiff through the post undelivered to the addressee.

Rules of the High Court, O. 10, r.1, http://www.hklii.hk/eng/hk/legis/reg/4A/s10.html.[5]  Hong Kong thus allows, with some qualifications, service via mail.  *See Silver Top*, 1995 WL 70599, at *2.

In *Brockmeyer*, the Ninth Circuit concluded that Rule 4(f)(2)(A) did not permit service via mail, even if allowed by the recipient country's law.  383 F.3d at 806–08.  The court reasoned that "the common understanding of Rule 4(f)(2)(A) is that it is limited to personal service," pointing out that "courts have applied Rule 4(f)(2)(A) to approve personal service carried out in accordance with foreign law."  *Id.* at 806 (citing *Med. Corp. v. McGonigle*, 955 F. Supp. 374, 383–84 (E.D. Pa. 1997); *Cosmetech Int'l, LLC v. Der Kwei Enter.*, 943 F. Supp. 311,

---

[5] The Court is not an expert in, and has no interest in offering commentary on, the judiciary structure of Hong Kong or the pertinent rules of service of process.  Nevertheless, even a cursory review of the Hong Kong judiciary reveals that a contract case, like this one, can, under certain circumstances, be brought in either the High Court of Hong Kong or the District Court of Hong Kong.  *See* The High Court, Guide to Court Services 43–44, http://www.judiciary.gov.hk/en/crt_services/pphlt/pdf/hc.pdf; The District Court, Guide to Court Services 24–25, http://www.judiciary.gov.hk/en/crt_services/pphlt/pdf/dc.pdf.  However, the rules of service in the District Court of Hong Kong are identical to those in the High Court of Hong Kong.  *See* Rules of the District Court, O. 10, r.1, http://www.hklii.hk/eng/hk/legis/reg/336H/s10.html.

316 (S.D.N.Y. 1996)). Next, the court considered the more specific provision in Rule

4(f)(2)(C)(ii), which provides explicit directions for serving an international defendant via mail,

and cited to the advisory committee's note to Rule 4(f)(2)(A)'s predecessor, which states that

"service by mail is proper *only* when it is addressed to the party to be served and a form of mail

requiring a signed receipt is used." Fed. R. Civ. P. 4(i)(1) advisory committee's note to 1963

amendment (emphasis added). Finally, the court looked toward specific exchanges between the

United States and the recipient country (Great Britain) in that case. The court found it relevant

that the British government had objected to a proposed Federal Rule of Civil Procedure whereby

if a plaintiff mailed a summons, complaint, and waiver of service to a foreign defendant, any

foreign defendant who refused to waive service would be assessed costs incurred by the plaintiff

in effecting service. *See Brockmeyer*, 383 F.3d at 807. The proposed rule was never enacted

based, in part, on the objections of the British government. *See id.* at 807–08. Given this

history, the court concluded that the British government's objection to the proposed rule made

sense only if the British government understood Rule 4(f)(2)(A) to not permit service by

ordinary mail, because otherwise, a plaintiff serving a defendant in Great Britain would never

seek a waiver of service, but would instead simply serve the summons and complaint pursuant to

Rule 4(f)(2)(A). *See id.* at 808.

     The Court is not persuaded by the Ninth Circuit's reasoning in these circumstances.

First, the language of Rule 4(f)(2)(A) is unambiguous: service may be effected "as prescribed by

the foreign country's law for service in that country in an action in its courts of general

jurisdiction." There are no qualifiers in the plain text of the rule that would warrant making an

exception for service via mail. *See Hammer v. RDR Books*, No. 10-CV-1007, 2011 WL

4388849, at *4 (S.D.N.Y. Sept. 20, 2011) (considering the "plain text" of the Federal Rules of

Civil Procedure); *cf. Griffin v. PaineWebber Inc.*, 84 F. Supp. 2d 508, 513–14 (S.D.N.Y. 2000)

(rejecting an argument because it was "contrary to the plain text" of the Federal Rules of Civil

Procedure). The Ninth Circuit pointed to the "common understanding" of Rule 4(f)(2)(A), but

supported that contention only by pointing to instances where service was effected pursuant to

Rule 4(f)(2)(A) via personal delivery. *See Brockmeyer*, 383 F.3d at 806. That service may be

effected under Rule 4(f)(2)(A) via personal delivery says nothing about whether service is also

proper via mail where the recipient country expressly permits it.

　　Moreover, the cases cited by the Ninth Circuit in support of its contention that "there are

a number of cases *rejecting* service of process by international mail under [Rule 4(f)(2)(A)]," *id.*

at 808, do not stand for the proposition for which they are cited. In *Prewitt Enterprises, Inc. v.*

*OPEC*, 353 F.3d 916 (11th Cir. 2003), the court did not reject, out of hand, the availability of

service via mail under Rule 4(f)(2)(A). Rather, the Eleventh Circuit held that although Austrian

law generally permitted service via mail by "Austrian courts on persons resident in Austria and

abroad," the more specific provisions regarding service of process from plaintiffs abroad did not

provide for such service, and Rule 4(f)(2)(A) therefore did not apply. *Id.* at 925. The court did

not question the applicability of Rule 4(f)(2)(A) to a plaintiff seeking to serve by mail, but

merely conducted the necessary inquiry into whether such service was prescribed by the law of

the recipient country. Here, a review of the Hong Kong rules for service do not include any

special provisions for service by foreign plaintiffs on defendants domiciled in Hong Kong, *see*

*generally* Rules of the High Court, O. 10–11, and *Prewitt* is therefore inapposite.

　　*Resource Ventures, Inc. v. Resources Management International, Inc.*, 42 F. Supp. 2d 423

(D. Del. 1999), also cited by the Ninth Circuit, did not even interpret Rule 4(f)(2)(A). The court,

instead, considered whether service may be effected through Rule 4(f)(2)(C)(ii)—which provides

for service via mail subject to certain conditions—even if the law of the recipient country does not prescribe service via that method. *Id.* at 429–30. The court reasoned, sensibly, that Rule 4(f)(2)(C)(ii) is applicable even if the recipient country did not prescribe service via mail because restricting the application of Rule 4(f)(2)(C)(ii) to those situations in which the recipient country expressly permits service via mail would render the rule redundant of Rule 4(f)(2)(A), which provides for any means of service authorized by the foreign country in which the defendant resides. *Id.* at 430. Such a conclusion is not supportive of and, in fact, cuts against the Ninth Circuit's reasoning—if service via mail was not authorized under Rule 4(f)(2)(A), the reasoning in *Resource Ventures* would make little sense, as the court's rationale was premised on the assumption that Rule 4(f)(2)(A) allows service via mail if prescribed by the foreign country's law, and Rule 4(f)(2)(C)(ii) allows service via mail, subject to certain restrictions, if not prohibited by the foreign country's law.

Finally, in *Dee-K Enterprises Inc. v. Heveafil Sdn. Bhd.*, 174 F.R.D. 376 (E.D. Va. 1997), the court did not permit service via mail pursuant to Rule 4(f)(2)(A) because "service via DHL courier or its equivalent is not prescribed by the laws of [the recipient countries] for service in an action in the courts of those countries." *Id.* at 378–79. Rule 4(f)(2)(A), of course, requires any service effected pursuant to that rule be expressly permitted by the law of the recipient country. That the court did not permit service via mail where the recipient countries did not permit such service says nothing about what should happen if and when the recipient country *does* permit service via mail.

The cases cited by the Ninth Circuit in support of its conclusion that Rule 4(f)(2)(A) does not permit service via mail, even if expressly permitted by the country in which the foreign defendant is to be served, are thus not on point. And that the Ninth Circuit was unable to locate

any authority allowing for service via mail pursuant to Rule 4(f)(2)(A) is neither dispositive nor particularly informative—it is no surprise that there is a dearth of authority regarding the availability of a form of service plainly provided for by the text of the rule.

The Ninth Circuit's citation to the advisory committee's notes is similarly unpersuasive. *See Brockmeyer*, 383 F.3d at 806–07. While the Ninth Circuit is correct that the 1963 advisory committee's notes state that "service by mail is proper only when it is addressed to the party to be served and a form of mail requiring a signed receipt is used," in addition to noting that "the mailing [must] be attended to by the clerk of the court," Fed. R. Civ. P. 4(i)(1) advisory committee's note to 1963 amendment, that comment must be read in context. In the version of the Rules in effect in 1963, the predecessor to Rule 4(f)(2)(A) was Rule 4(i)(1)(a), which allowed for service "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction." Fed. R. Civ. P. 4(i)(1)(a) (1963). The advisory committee's notes state that the purpose of that section was to provide "an alternative that is likely to create least objection in the place of service and also is likely to enhance the possibilities of securing ultimate enforcement of the judgment abroad." Fed. R. Civ. P. 4(i)(1) advisory committee's notes to 1963 amendment. The rule thus contemplates that service should be effected in a manner that will allow for foreign enforcement of any judgment rendered in the United States. Service by any method prescribed by the foreign country— whether by mail, e-mail, agent, or some other means—surely serves that interest. Indeed, the first part of the committee's notes discussing Rule 4(f)(2)(C)(ii) (at that time, Rule 4(i)(1)(D)), makes clear that the purpose of requiring service by mail to conform to the requirements set forth in that rule was to account for the fact that "reliability of postal service may vary from country to country." *Id.* Such a concern is less salient where the country itself allows service via mail, as a

country allowing service via mail is presumably aware of and may account for the reliability of its own mail service.

It makes more sense to view Rule 4(f)(2)(C)(ii) as an alternative to Rule 4(f)(2)(A) when service via mail is either not authorized (but not prohibited) by the law of the recipient country, or when compliance with the rules for service via mail set forth in Rule 4(f)(2)(C)(ii) is less burdensome than using the methods prescribed by the recipient country. While this precise issue has not been explicitly ruled on by any other court in the Second Circuit, courts have appeared to implicitly accept that Rule 4(f)(2)(A) allows for service through any method, including mail, permitted by the recipient country. *See Modern Computer Corp. v. Ma*, 862 F. Supp. 938, 946 (E.D.N.Y. 1994) (allowing service via mail under Rule 4(f)(2)(A) where the plaintiff submitted an affidavit claiming that service via mail complied with the law of the recipient country); *cf. Ansell Healthcare, Inc. v. Maersk Line*, 545 F. Supp. 2d 339, 342 (S.D.N.Y. 2008) (finding service via mail under Rule 4(f)(2)(A) ineffective because the plaintiffs had not complied with a law of the recipient country requiring a court order allowing for service via mail); *Ty v. Celle*, No. 95-CV-2631, 1996 WL 452408, at *3 (S.D.N.Y. Aug. 9, 1996) (finding service via mail under Rule 4(f)(2)(A) ineffective because the plaintiff had not complied with a law of the recipient country requiring service by a court officer and requiring a court order). Courts outside the Second Circuit (and the Ninth Circuit) have also implicitly acknowledged that service via mail may be valid under Rule 4(f)(2)(A). *See Julien v. Williams*, No. 10-CV-2358, 2010 WL 5174535, at *3 (M.D. Fla. Dec. 15, 2010) (holding that "in order to determine if service by mail was proper in this case under Rule 4(f)(2)(A), this [c]ourt must look to the law of [the recipient country]"); *The Knit With v. Knitting Fever, Inc.*, Nos. 08-CV-4221, 08-CV-4775, 2010 WL 2788203, at *9 (E.D. Pa. July 13, 2010) (looking to the law of the recipient country to determine

whether service via mail was valid under Rule 4(f)(2)(A)); *Mitchell v. Theriault*, 516 F. Supp. 2d 450, 456–57 (M.D. Pa. 2007) (concluding that service on an individual could be effected via mail pursuant to Rule 4(f)(2)(A), but holding that service on a corporation via mail was ineffective because of certain restrictions in the law of the recipient country).

Because the most natural reading of Rule 4(f)(2)(A), on its face and in context, is that service may be effected by any means prescribed by the law of the recipient country, and because the law of Hong Kong permits service via mail on defendants residing within its jurisdiction, the Court concludes that service could have been effected here by service via mail in accordance with the law of Hong Kong. However, a review of the docket reveals that Plaintiff has not complied with the rules set forth for service via mail in Hong Kong. Specifically, those rules provide that the affidavit of service must include a statement that

> (i) in the opinion of the deponent (or, if the deponent is the plaintiff's solicitor or an employee of that solicitor, in the opinion of the plaintiff) the copy of the writ, if sent to, or as the case may be, inserted through the letter box for, the address in question, will have come to the knowledge of the defendant within 7 days thereafter; and

> (ii) in the case of service by post, the copy of the writ has not been returned to the plaintiff through the post undelivered to the addressee.

Rules of the High Court, O. 10, r.1(3)(b). The affidavit of service submitted by Plaintiff in this case did not provide the above information. (*See* Certificate of Service (Dkt. No. 4, 08-AP-1475 Dkt.).) Service therefore could have been effected via mail as set forth in the rules of the High Court of Hong Kong, but was not.[6]

Rule 4(f)(2)(C)(ii), by contrast, does not require compliance with the service rules prescribed by the recipient country. Instead, the rule allows service via mail, provided that the

---

[6] Without having the benefit of briefing or expert testimony, the Court cannot speculate on whether service was deficient under the law of Hong Kong for other reasons.

summons and complaint is addressed and sent by the clerk of court in a form that requires a signed receipt, and the recipient country does not object to service via mail. As set forth above, Hong Kong has not objected to Article 10(a), nor do the service rules in Hong Kong prohibit service via mail. (*See supra*.) Accordingly, Rule 4(f)(2)(C)(ii) could serve as the basis for service via mail in this circumstance.

However, the service attempted here on February 6, 2009 was plainly inadequate under Rule 4(f)(2)(C)(ii), as that rule provides that *the clerk of court* must address and send the summons and complaint—the February 6 service was effected by *an agent of Plaintiff*—and that rule also mandates the use of a form of mail that requires a receipt—there is no indication in the certificate of service that that was the case here. *See Ansell Healthcare*, 545 F. Supp. 2d at 342 ("[The] [p]laintiffs . . . did not comply with Rule 4(f)(2)(C)(ii) because [the] [p]laintiffs' counsel, not the [c]lerk of [c]ourt, initiated service upon [the defendant] through registered/certified mail."); *Marine Trading Ltd.*, 879 F. Supp. at 392 ("The service attempted by [the] petitioner under Rule 4(f)(2)(C)(ii) therefore was ineffective because there is no receipt signed by [the] respondent and no other evidence of delivery."). As discussed above, the service attempted via the Clerk of Court on August 22, 2016 also was ineffective because it did not include the summons and complaint and did not use a form of mail that requires a receipt. (*See* Certification of Foreign Mailing (Dkt. No. 17, 08-AP-1475 Dkt.).)

Plaintiff cites *TracFone Wireless, Inc. v. Sunstrike Int'l, Ltd.*, 273 F.R.D. 697 (S.D. Fla. 2011), in support of its claim that service may be properly effected on a Hong Kong defendant by mail. (*See* Mot. To Confirm ¶ 51.) But that case merely held, and the Court agrees, that service on a Hong Kong defendant may be effected pursuant to Rule 4(f)(2)(C)(ii). *Id.* at 699. The court did not suggest that Hong Kong's nonobjection to Article 10(a) absolved the plaintiff

of complying with the requirements set forth in Rule 4(f)(2)(C)(ii). Thus, because the service attempted here did not comply with Rule 4(f)(2)(C)(ii), *TracFone* does not salvage Plaintiff's case.

No other provision of Rule 4(f)(2) appears to apply in this circumstance, and service therefore was not effected pursuant to Rule 4(f)(2).

### iii. Rule 4(f)(3)

Plaintiff's last hope is therefore Rule 4(f)(3), which offers a catchall provision, allowing service "by other means not prohibited by international agreement, as the court orders." As the rule makes plain, however, alternative service under Rule 4(f)(3) is available only where ordered by the court, and there is nothing in the record indicating that the bankruptcy court authorized service pursuant to Rule 4(f)(3), and the Court cannot, after the fact, provide such authorization. *See United States v. Machat*, No. 08-CV-7936, 2009 WL 3029303, at *4 (S.D.N.Y. Sept. 21, 2009) ("Declaring prior service effective nunc pro tunc is not appropriate because Rule 4(f)(3) requires that the means of service be ordered by the [c]ourt and the [plaintiff's] prior ineffectual efforts were not done pursuant to [c]ourt order." (italics omitted)). Moreover, while a "plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)," *S.E.C. v. Anticevic*, No. 05-CV-6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009), courts in the Second Circuit have frequently required parties attempting to effectuate service pursuant to Rule 4(f)(3) to offer "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary," *Devi v. Rajapaska*, No. 11-CV-6634, 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012); *see also Altos Hornos*, 2015 WL 6437384, at *2 (same). Plaintiff has made no effort to make such a showing here, and there is no

evidence that Plaintiff has attempted service of the summons and complaint in a form sanctioned by Rules 4(f)(1) or 4(f)(2). *See Altos Hornos*, 2015 WL 6437384, at *3 ("The availability of [service through the Hague Convention] bears on the issue of whether alternative means of service are warranted.").

## III.  Conclusion

The Court therefore concludes that service of the summons and complaint has not been effected on Defendant.  Less clear is the effect of such failure.  It is axiomatic that because Defendant was not properly served with the summons and complaint, the order compelling arbitration cannot be enforced as to Defendant.  *See Briscoe v. City of New Haven*, 654 F.3d 200, 203 (2d Cir. 2011) ("The general principle in Anglo-American jurisprudence is 'that one is not bound by a judgment in personam in a litigation . . . to which he has not been made a party by service of process.'" (italics omitted) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).  But the effect of Plaintiff's failure to serve on the validity of the arbitration is not a question the Court is prepared to answer, particularly because it does not have the benefit of briefing on the issue from either Party.

Accordingly, it is hereby ordered:

1) Within 30 days of the date of this Order, Plaintiff shall serve or attempt to serve the summons and complaint on Defendant in a matter consistent with the Federal Rules of Civil Procedure, or shall petition the Court to allow alternative service under Rule 4(f)(3).

2) Within 30 days of certifying to the Court that service has been effected, Plaintiff shall submit briefing, not to exceed 10 pages, explaining how the Court should proceed at this stage. Defendant may respond within 30 days, in briefing not to exceed 10 pages.

SO ORDERED.

DATED:     May 9 , 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE